# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **ATHIGE DENZIL DESILVA,** § <br> **Individually, As Heir at Law to the** § <br> **ESTATE OF DR. MAURIS DESILVA,** § <br> **and on behalf OF ALL WRONGFUL** § <br> **DEATH BENEFICIARIES,** § <br> *Plaintiff* § <br> § <br> **v.** § <br> § <br> **CHRISTOPHER TAYLOR,** § <br> **KARL KRYCIA, and** § <br> **CITY OF AUSTIN,** § <br> *Defendants* § | **Case No. 1:21-cv-00129-RP** |

**O R D E R**

Before the Court are Defendants Karl Krycia and Christopher Taylor's Motion to Stay Discovery, filed November 19, 2021 (Dkt. 17); Plaintiff's response in opposition, filed December 3, 2021 (Dkt. 18); and Defendants' Reply, filed December 10, 2021 (Dkt. 22). On December 15, 2020, the District Court referred the motion to the undersigned Magistrate Judge for disposition, pursuant to 28 U.S.C. § 636(b)(1)(A), Federal Rule of Civil Procedure 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I. Background

On July 31, 2019, at approximately 5 p.m., a resident of Spring Condominiums in downtown Austin, Texas called 911 to report that his neighbor, Dr. Mauris DeSilva, was having "another mental episode" and asked that a mental health officer be dispatched. Compl. (Dkt. 1), ¶ 14. The neighbor had observed DeSilva acting erratically and holding a large kitchen knife up to his throat. *Id.* ¶ 19. Shortly thereafter, Austin Police Department ("APD") Officers Christopher Taylor, Karl Krycia, Joseph Cast, and Phillip Zuniga arrived. The officers entered the building, spoke to lobby

staff, and reviewed security footage. They learned that DeSilva was on the fifth floor of the condominiums, where the common areas of the building were located, brandishing his knife toward security cameras. *Id.* ¶ 22. The officers and Martin Guardado, a private security guard employed by Spring Condominiums, took an elevator to the fifth floor.

Plaintiff alleges that when the elevator doors opened, DeSilva was standing in the hallway across from the elevator with his back to the officers, looking in a mirror and holding a knife to his neck. *Id.* ¶ 25. The officers allege that when the elevator doors opened, DeSilva "was standing almost directly in front of the officers—not even two quick steps away from stabbing distance to the people inside the elevator." Dkt. 17 at 4. Both parties agree that the officers shouted at DeSilva to drop the knife. Dkt. 1 ¶ 26. Plaintiff contends that DeSilva "complied with this request and lowered his knife." *Id.* ¶ 26. The officers contend that instead of dropping the knife, DeSilva "began walking *toward* the officers while still holding the knife in his hand." Dkt. 17 at 4.

The officers allege that they waited until DeSilva "was almost within arm's reach before discharging their weapons in defense of both themselves and the other people in the elevator with them." *Id.* at 5. Plaintiff alleges that before the officers shot DeSilva, Officer Cast used a taser on DeSilva, but "rather than wait and see if the less lethal taser shot would be effective, Officers Taylor and Krycia simultaneously fired multiple shots at Dr. DeSilva." Dkt. 1 ¶ 28. DeSilva died of multiple gunshot wounds to his chest.

On February 5, 2021, DeSilva's father, Athige Denzil DeSilva, as heir to DeSilva's estate, filed this civil rights lawsuit under 42 U.S.C. § 1983 against the City of Austin and Officers Taylor and Krycia. Plaintiff alleges that Defendants Taylor and Krycia violated DeSilva's rights under the Fourth and Fourteenth Amendments to the United States Constitution, and that the City is liable under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), for failure to train

and supervise its police officers. Plaintiff seeks compensatory and punitive damages and attorneys' fees and costs.

Although APD investigated and cleared Defendants Taylor and Krycia's use of deadly force against DeSilva, after Plaintiff filed this lawsuit, Travis County District Attorney Jose Garza charged Taylor and Krycia with first-degree murder for DeSilva's death. Dkt. 17 at 5-6. On August 27, 2021, a Travis County grand jury indicted Taylor and Krycia on first-degree murder charges. Case Nos. D-1-DC-21-900071 and D-1-DC-19-900111 at https://www.traviscountytx.gov/district-clerk/online-case-information.[1]

In support of their Motion to Stay Discovery, Defendants Krycia and Taylor argue that the Court should stay discovery pending resolution of their criminal cases because:

> Defendants' collective legal counsel have serious concerns about proceeding forward with civil discovery before their respective client's criminal case has resolved because of the very real and unjust peril of the two officers being forced to choose between either: (1) asserting their Fifth Amendment rights, which would consequently cripple the Defendants' ability to vigorously defend this civil suit; **or** (2) waive their respective Constitutional rights, testify in discovery herein, and consequently cripple Defendants' ability to vigorously defend against the criminal first-degree murder charges looming over them. Defendants accordingly move this Court for a temporary stay of all discovery in this civil lawsuit as it pertains to the individual Defendants in order to ensure that they are able to fully defend themselves in **both** legal actions.

Dkt. 17 at 6-7. Plaintiff opposes the Motion.

## II.   Legal Standards

"When a defendant in a civil case is facing criminal charges, a district court may, in its discretion, stay the civil action." *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571

---

[1] The Court takes judicial notice of the state court docket under Federal Rule of Evidence 201. *Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (holding that district court may take judicial notice of state court docket).

F. Supp. 2d 758, 761 (W.D. Tex. 2008); *see also United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983) ("Certainly, a district court may stay a civil proceeding during the pendency of a parallel criminal proceeding."). Such a stay contemplates "special circumstances" and the need to avoid "substantial and irreparable prejudice." *Little Al*, 712 F.2d at 136.

In determining whether civil discovery should be allowed to proceed during the pendency of a parallel criminal case, the Fifth Circuit has directed district courts to employ "judicial discretion and procedural flexibility" to "harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other." *In re Grand Jury Subpoena*, 866 F.3d 231, 234 (5th Cir. 2017) (quoting *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962)). Because civil and criminal proceedings are subject to different procedural rules, "less restrictive civil discovery could undermine an ongoing criminal investigation and subsequent criminal case." *Id*.

When deciding whether "special circumstances" warrant a stay, courts in the Fifth Circuit have found the following factors relevant: (1) the extent to which the issues in the criminal and civil cases overlap, (2) the status of the criminal case, (3) the private interests of the plaintiffs in proceeding expeditiously, (4) the burden on the defendants, (5) the interest of the courts, and (6) the public interest. *Olson ex rel. H.J. v. City of Burnet*, No. A-20-CV-00162-JRN, 2020 WL 9076545, at *1 (W.D. Tex. July 17, 2020) (citing *Alcala v. Texas Webb Cnty.*, 625 F. Supp. 2d 391, 397-98 (S.D. Tex. 2009)). Courts have found special circumstances where a defendant attempts to preserve his Fifth Amendment right against self-incrimination and resolve "the conflict he would face between asserting this right and defending the civil action." *Bean v. Alcorta*, 220 F. Supp. 3d 772, 775 (W.D. Tex. 2016) (quoting *Alcala*, 625 F.Supp.2d at 397).

### III.    Analysis

Defendants Taylor and Krycia address each of the above factors in depth and argue that all factors weigh in favor of a stay. Plaintiff failed to address any of these factors in his response brief. The Court could grant the motion on this basis alone, but considers each factor nonetheless.

**A.  Whether Issues in the Criminal and Civil Cases Sufficiently Overlap**

The extent to which issues in the criminal case overlap with those presented in the civil case generally is regarded as "the most important factor in the analysis." *Slack v. City of San Antonio, Texas*, No. CV SA-18-CA-1117-FB, 2019 WL 11097069, at *2 (W.D. Tex. May 28, 2019). "Where there is significant overlap, self-incrimination is more likely and thus weighs in favor of a stay." *Bean*, 220 F. Supp. 3d at 776

The same incident forms the basis of this lawsuit and the criminal charges—the alleged use of deadly force against DeSilva on July 31, 2019. Because there is significant overlap between the issue presented in this case and Defendants' criminal proceedings, there is a significant danger of self-incrimination. *See Bean*, 220 F. Supp. 3d at 776 (finding that first and most important factor strongly weighed in favor of stay). The first and most important factor weighs strongly in favor of staying the case.

**B.  Status of the Criminal Cases**

Because Taylor and Krycia already have been indicted, the second factor also weighs in favor of a stay. As explained in *Librado v. M.S. Carriers, Inc.*, No. 3:02-CV-2095D, 2002 WL 31495988, at *2 (N.D. Tex. Nov. 5, 2002):

> A stay of a civil case is most appropriate where a party to the civil case has already been indicted for the same conduct for two reasons: first, the likelihood that a defendant may make incriminating statements is greatest after an indictment has issued, and second, the prejudice to the plaintiffs in the civil case is reduced since the criminal case will likely be quickly resolved due to Speedy Trial Act considerations.

*See also Walker v. Wilburn*, No. 3:13-CV-4896-D, 2015 WL 5873392, at *7 (N.D. Tex. Oct. 5, 2015) ("Because Officer Wilburn has been indicted, the court concludes that the status of the criminal case weighs in favor of a stay.").

## C. Whether Plaintiff's Private Interests Outweigh the Prejudice Caused by a Delay

The Court next weighs "the private interests of the plaintiff in proceeding expeditiously against the prejudice that will be caused by the delay that will result from the stay." *Sec. & Exch. Comm'n. v. Mutuals.com, Inc.*, No. 3:03-CV-2912-D, 2004 WL 1629929, at *3 (N.D. Tex. July 20, 2004). When evaluating the third factor, courts "may require a plaintiff to establish more prejudice than simply a delay in its right to expeditiously pursue his claim." *Bean*, 220 F. Supp. 3d at 776.

While it is clear that Plaintiff's interest in proceeding expeditiously will not be advanced by a stay, Plaintiff has not alleged that he will suffer any prejudice other than delay in his right to pursue his claim. Plaintiff identifies no discovery that is available now but would be unavailable later should a stay be granted. Plaintiff also has not alleged that any witnesses will be unable to testify nor that any particular evidence will degrade if a stay is granted. Because Plaintiff is "unlikely to face any significant prejudice if a stay is granted," the third factor favors granting a stay.

## D. Defendants' Private Interests

Next, the Court considers the private interests of Defendants Taylor and Krycia in securing the stay and the burden that would result if the stay were denied. *Id.* "Absent a stay, [an Officer] faces a conflict between asserting his Fifth Amendment rights and fulfilling his legal obligations as a witness in [the parallel] civil action." *Librado*, 2002 WL 31495988, at *3. Such a conflict would be eliminated by a stay of discovery. *Id.* Additionally, Defendants have an interest in staying the civil trial to avoid exposing their criminal defense strategies to the prosecution. *Alcala*, 625 F. Supp. 2d at 397 (holding that a stay may be justified in order to prevent "exposing the defense

theory to the prosecution in advance of trial, or otherwise prejudicing the criminal case"). The Court concludes that the fourth factor also weighs in favor of a stay.

### E. Court's Interests

Next, the Court's interests are considered when determining whether to grant a motion to stay. *See Walker*, 2015 WL 5873392, at *9; *Librado*, 2002 WL 31495988, at *3. On the one hand, "courts have a strong interest in moving matters expeditiously through the judicial system." *Jean v. City of Dallas, Texas*, No. 3:18-CV-2862-M, 2019 WL 4597580, at *5 (N.D. Tex. Sept. 22, 2019) (cleaned up). On the other hand, granting a stay "serves the interests of the courts, because conducting the criminal proceedings first advances judicial economy." *Id.* Resolution of the criminal case may increase prospects for settlement of the civil case and, "[d]ue to differences in the standards of proof between civil and criminal prosecutions, the possibility always exists for a collateral estoppel or res judicata effect on some or all of the overlapping issues." *Id.* The Court finds that its interests do not weigh against a stay.

### F. Public Interest

Finally, the public interest must be considered in determining whether to grant a stay. *See Walker*, 2015 WL 5873392, at *9; *Librado*, 2002 WL 31495988, at *3. "The public has an interest in the just and constitutional resolution of disputes with minimal delay." *Walker*, 2015 WL 5873392, at 9. Defendants Taylor and Krycia have been indicted and their cases are pending. The sixth factor typically weighs against the grant of a stay only where, unlike here, a civil case is pending and no criminal investigation has begun. *Meyers v. Pamerleau*, No. 5:15-CV-524-DAE, 2016 WL 393552, at *7 (W.D. Tex. Feb. 1, 2016). Moreover, "[w]hile the public certainly has an interest in the prompt resolution of the instant civil case, it also has an interest in protecting the constitutional rights of criminal defendants." *Id.* Accordingly, the final factor also supports a stay.

### IV. Conclusion

Finding that each of the relevant factors weighs in favor of a stay, Defendants Taylor and Krycia's Motion to Stay Discovery (Dkt. 17) is **GRANTED**. The Court temporarily **STAYS** all discovery in this case involving Defendants Taylor and Krycia pending resolution of their criminal proceedings in state court.

It is **FURTHER ORDERED** that this case is **REMOVED** from the Magistrate Court's docket and **RETURNED** to the docket of the Honorable Robert Pitman.

**SIGNED** on February 23, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE